**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION**

| | |
|---|---|
| SHEILA HARTLEBEN, and JAY PATTEN, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WEL COMPANIES, INC.<br><br>Defendant. | Case No. _____<br><br><br>**CLASS REPRESENTATION**<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Sheila Hartleben and Jay Patten (collectively, "Plaintiffs"), individually, and on behalf of all others similarly situated, bring this action against the WEL Companies, Inc. ("WEL" or "Defendant"). Plaintiffs brings this action by and through their attorneys, and allege, based upon personal knowledge as to their own actions, and based upon information and belief and reasonable investigation by their counsel as to all other matters, as follows.

## I.      INTRODUCTION

1.      WEL Companies, Inc. is a trucking and transportation company based out of De Pere, Wisconsin, which provides trucking, shipping, warehousing, and other related services across the United States.

2.      As part of its operations, WEL collects, maintains, and stores highly sensitive "personally identifying information" ("PII") from its current and former employees and other individuals.

3.      On and around January 31, 2025, WEL experienced a data breach incident in which unauthorized individuals accessed its information systems and databases and stole PII contained

therein (the "Breach" or "Data Breach"). A subsequent investigation determined that names, Social Security numbers, driver's licenses and/or state IDs, and Non-U.S. national ID numbers belonging to WEL's current and former employees, and other individual from whom it collected PII, were compromised in the Breach.

4.     On and around November 18, 2025, WEL began sending notice letters to individuals whose information was accessed in the Data Breach.

5.     Because WEL stored and handled Plaintiffs' and Class members' highly-sensitive PII, it had a duty and obligation to safeguard this information and prevent unauthorized third parties from accessing this data.

6.     Ultimately, WEL failed to fulfill this obligation, as unauthorized actors breached WEL's information systems and stole vast quantities of PII contained therein. The Data Breach— and the successful exfiltration of PII—were the direct, proximate, and foreseeable results of multiple failings on the part of WEL.

7.     The Data Breach occurred because WEL failed to implement reasonable security protections to safeguard its information systems and databases. Thereafter, upon information and belief, WEL failed to discover the Breach within a reasonable period of time. Further, WEL unreasonably delayed for nearly over ten months before it began informing victims of the Data Breach.

8.     As a result of WEL's negligent, reckless, intentional, and/or unconscionable failure to adequately satisfy its contractual, statutory, and common-law obligations, Plaintiffs and Class members suffered injuries, but not limited to:

- Lost or diminished value of their PII;

- Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII;

- Lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges;

- Time needed to investigate, correct and resolve unauthorized access to their accounts; time needed to deal with spam messages and e-mails received subsequent to the Data Breach;

- Charges and fees associated with fraudulent charges on their accounts; and

- The continued and increased risk of compromise to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their PII.

9. Accordingly, Plaintiffs bring this action on behalf of all those similarly situated to seek relief for the consequences of Defendant's failure to reasonably safeguard Plaintiffs' and Class members' PII; its failure to reasonably provide timely notification to Plaintiffs and Class members that their PII had been compromised; and for Defendant's failure to inform Plaintiffs and Class members concerning the status, safety, location, access, and protection of their PII.

## II. PARTIES

### Plaintiffs

10. Plaintiff Hartleben is a resident and citizen of New London, Wisconsin. Plaintiff Hartleben was an employee of WEL.

11. Plaintiff Patten is a resident and citizen of Philadelphia, Pennsylvania. Plaintiff Patten is a current employee of WEL

### Defendant WEL Companies, Inc.

12. Defendant WEL Companies, Inc. is a Wisconsin corporation with its principal place of business located at 1625 S. Broadway, De Pere, WI 64115. From its headquarters in Wisconsin, Defendant conducts business across the United States.

## III. JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, the number of class members exceeds 100, and at least one Class member is a citizen of a state different from Defendant. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

14.     This Court has personal jurisdiction over Defendant because Defendant is a Wisconsin corporation which is headquartered in Wisconsin.

15.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' and Class members' claims occurred in this District and because Defendant resides in this district.

## IV. FACTUAL ALLEGATIONS

### A. WEL Companies, Inc. – Background

16.     WEL is a trucking and transportation company which provides trucking, shipping, warehousing, and other related services. Established in 1975, WEL currently employs over 500 individuals and conducts business nationally.

17.     As part of its normal operations, WEL collects, maintains, and stores large volumes of PII from its employees and other individuals.

18.     Upon information and belief, WEL failed to implement necessary data security safeguards at the time of the Data Breach. This failure resulted in cybercriminals accessing the PII that WEL collected and maintained, PII which belong to Plaintiffs and Class members.

19.     Plaintiffs and Class members made their PII available to WEL with the reasonable expectation that any entity with access to this information would keep that sensitive and personal

4

information confidential and secure from illegal and unauthorized access. They similarly expected that, in the event of any unauthorized access, these entities would provide them with prompt and accurate notice.

20.     This expectation was objectively reasonable and based on an obligation imposed on WEL by statute, regulations, industrial custom, and standards of general due care.

21.     Unfortunately for Plaintiffs and Class members, WEL failed to carry out its duty to safeguard sensitive PII and provide adequate data security. As a result, it failed to protect Plaintiffs and Class members from having their PII accessed and stolen during the Data Breach.

**B.     The Data Breach**

22.     On and around January 31, 2025, WEL staff discovered suspicious activity on its network and computer systems. Subsequent investigation determined that unauthorized actors accessed WEL's systems, and compromised files which contained the names, Social Security numbers, driver's license/state IDs, and non-U.S. national ID numbers of Plaintiffs and Class Members.

23.     On and around November 18, 2025, WEL began sending notice letters to all individuals it believed had been affected by the Breah.

**C.     WEL's Many Failures Both Prior to and Following the Breach**

24.     Defendant collects and maintains vast quantities of PII belonging to Plaintiffs and Class members as part of its normal operations. The Data Breach occurred as direct, proximate, and foreseeable results of multiple failings on the part of Defendant.

25.     First, Defendant inexcusably failed to implement reasonable security protections to safeguard its information systems and databases.

5

26.     Second, upon information and belief, Defendant failed to timely detect this data breach with Defendant's computer systems.

27.     Third, Defendant failed to inform the public that its data security practices were deficient and inadequate. Had Plaintiffs and Class members been aware that Defendant did not have adequate safeguards in place to protect such sensitive PII, they would have never provided such information to Defendant.

28.     In addition to the failures that lead to the successful breach, Defendant's failings in handling the breach and responding to the incident exacerbated the resulting harm to the Plaintiffs and Class members. Chiefly, Defendant delayed for over ten months before it began informing victims of the Data Breach; during these ten months, the presumed cybercriminals who stole this PII could freely monetize, misuse and/or disseminate that PII before the Plaintiffs and Class members could take any affirmative steps to protect their sensitive information. As a result, Plaintiffs and Class members will suffer indefinitely from the substantial and concrete risk that their identities will be (or already have been) stolen and misappropriated.

29.     In short, Defendant's myriad failures, including the failure to timely detect an intrusion and failure to timely notify Plaintiffs and Class members that their personal information had been stolen due to Defendant's security failures, allowed unauthorized individuals to access, misappropriate, and misuse Plaintiffs' and Class members' PII for over ten months before Defendant finally granted victims the opportunity to take proactive steps to defend themselves and mitigate the near- and long-term consequences of the Data Breach.

**D.** **Data Breaches Pose Significant Threats**

30.     Data breaches have become a constant threat that, without adequate safeguards, can expose personal data to malicious actors. It is well known that PII, and Social Security numbers in particular, is an invaluable commodity and a frequent target of hackers.

31.     The Identity Theft Resource Center's ("ITRC") Annual End-of-Year Data Breach Report for 2024 listed 3,158 total compromises, for which 1,350,835,988 individual victim notices were dispatched.[1] This is just 57 breaches short of 2023's record-breaking total of 3,205 data breaches.[2] But the astronomical figure of 1,350,835,988 victim notices represents a 211% increase over 2023's 353,027,892 victim notices, primarily due to five "mega-breaches" (breaches involving at least 100 million victims) which took place in 2024.[3]

32.     Statista, a German entity that collects and markets data relating to, among other things, data breach incidents and the consequences thereof, confirms that the number of data breaches has been steadily increasing since it began a survey of data compromises in 2005 with 157 compromises reported that year, to a peak of 3,205 in 2023.[4] The number of impacted individuals has also risen precipitously from approximately 318 million in 2015 to 1.35 billion in 2024.[5]

---

[1] *2024 Data Breach Report*, Identity Theft Resource Center (January 2025), available at https://www.idtheftcenter.org/publication/2024-data-breach-report/.

[2] *2023 Data Breach Report*, Identity Theft Resource Center (January 2023), available at https://www.idtheftcenter.org/publication/2023-data-breach-report/.

[3] *2024 Data Breach Report*, Identity Theft Resource Center (January 2025), available at https://www.idtheftcenter.org/publication/2024-data-breach-report/; *2023 Data Breach Report*, Identity Theft Resource Center (January 2023), available at https://www.idtheftcenter.org/publication/2023-data-breach-report/.

[4] *Annual Number of Data Breaches and Exposed Records in the United States from 2005 to 2024*, Statista (Updated May 23, 2025), available at: https://www.statista.com/statistics/273550/data-breaches-recorded-in-the-united-states-by-number-of-breaches-and-records-exposed.

[5] *Id.*

7



Figure 1 – *Chart of the Number of Data Breaches and Affected Individuals from 2005 to 2024.* [6]

33.    This stolen PII is then routinely traded on dark web black markets as a simple commodity, with online banking login information costing an average of $100, full credit card details and associated details costing between $10 and $100, and comprehensive data packages enabling complete identity theft selling for $1,000.[7]

34.    In addition, the severity of the consequences of a compromised social security number belies the ubiquity of stolen numbers on the dark web. Criminals and other unsavory groups can fraudulently take out loans under the victims' name, open new lines of credit, and cause other serious financial difficulties for victims:

---

[6] *Id.*

[7] Ryan Smith, *Revealed-how much is personal information worth on the dark web?*, Insurance News (May 1, 2023), available at https://www.insurancebusinessmag.com/us/news/breaking-news/revealed--how-much-is-personal-information-worth-on-the-dark-web-444453.aspx.

[a] dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[8]

This is exacerbated by the fact that the problems arising from a compromised social security number are exceedingly difficult to resolve. A victim is forbidden from proactively changing his or her number unless and until it is actually misused and harm has already occurred. And even this delayed remedial action is unlikely to undo the damage already done to the victims:

Keep in mind that a new number probably won't solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number won't guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.[9]

35.     Further, as data breaches become ever more prevalent and as technology advances, computer programs can scan the internet to create a mosaic of information that could be used to link compromised information to an individual in ways in a phenomenon known as the "mosaic effect." By and through this process, names, dates of birth, and contact information such as telephone numbers and email addresses, hackers and identity thieves can access users' other accounts by, for example, bypassing security questions and 2FA security with the comprehensive collection of information at their disposal.

36.     Thus, because of this effect, cybercriminals and other unauthorized parties could

---

[8] United States Social Security Administration, *Identity Theft and Your Social Security Number*, United States Social Security Administration (July 2021), available at: https://www.ssa.gov/pubs/EN-05-10064.pdf.
[9] *Id.*

use Plaintiffs' and Class Members' PII to access, inter alia, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiffs and Class Members, even when that specific category of information is not compromised in a given breach.

37.     A particularly trouble example of this effect is the development of "Fullz" packages. A "Fullz" packages is a dosser of information that cybercriminals and other unauthorized parties can assemble by cross-referencing the PII compromised in a given data breach to publicly available data or data compromised in other data breaches. Automated programs can and are routinely used to create these dossiers and they typically represent an alarmingly accurate and complete profile of a given individual.

38.     Therefore, through the use of these "Fullz" packages, stolen PII from this Data Breach can be easily linked to Plaintiffs' and the proposed Class's phone numbers, email addresses, and other sources and identifiers. Thus, even if certain information such as emails, phone numbers, or credit card or financial account were not compromised in this Data Breach, criminals can easily create a Fullz package to sell for profit.

39.     Upon information and belief, this has already transpired (and will continue to transpire) for Plaintiffs and the Class. And any reasonable for any trier of fact will find that Plaintiffs and other Class Members' stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

40.     In addition, the Federal Trade Commission ("FTC") has brought dozens of cases against companies that have engaged in unfair or deceptive practices involving inadequate

protection of consumers' personal data. The FTC publicized these enforcement actions to place companies like Defendant on notice of their obligation to safeguard collected PII.[10]

41. Given the nature of Defendant's Data Breach, as well as the length of the time Defendant's networks were breached and the long delay in notification to victims thereof, it is foreseeable that the compromised PII has been or will be used by hackers and cybercriminals in a variety of devastating ways. Indeed, the cybercriminals who possess Plaintiffs' and Class members' PII can easily obtain Plaintiffs' and Class members' tax returns or open fraudulent credit card accounts in Class members' names.

42. Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because credit card victims can cancel or close credit and debit card accounts.[11] The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

43. Despite the prevalence of public announcements of data breach and data security compromises, its own acknowledgment of the risks posed by data breaches, and its own acknowledgment of its duties to keep PII private and secure, Defendant failed to take appropriate steps to protect the PII of Plaintiffs and Class members from misappropriation. As a result, the

---

[10] *See, e.g.*, *In the Matter of SKYMED INTERNATIONAL, INC.*, C-4732, 1923140 (F.T.C. Jan. 26, 2021).

[11] *See* Jesse Damiani, *Your Social Security Number Costs $4 On The Dark Web, New Report Finds*, Forbes (Mar 25, 2020), available at https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1. *See also Why Your Social Security Number Isn't as Valuable as Your Login Credentials*, Identity Theft Resource Center (June 18, 2021), available at https://www.idtheftcenter.org/post/why-your-social-security-number-isnt-as-valuable-as-your-login-credentials/.

injuries to Plaintiffs and Class members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for Plaintiffs and Class members.

**E.**  **Defendant Had a Duty and Obligation to Protect PII**

44.  Defendant has an obligation to protect the PII belonging to Plaintiffs and Class members. First, this obligation was mandated by government regulations and state laws, including FTC rules and regulations. Second, this obligation arose from industry standards regarding the handling of sensitive PII. Plaintiffs and Class members provided, and Defendant obtained, their information on the understanding that it would be protected and safeguarded from unauthorized access or disclosure.

**1.**  **FTC Act Requirements and Violations**

45.  The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

46.  In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[12] The guidelines note businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt

---

[12] *Protecting Personal Information: A Guide for Business*, Federal Trade Comm'n (October 2016), available at https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business (last accessed August 15, 2023).

information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.[13] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[14] Defendant clearly failed to do any of the foregoing, as evidenced by the length of the Data Breach, the fact that the Breach went undetected, and the amount of data exfiltrated.

47. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

48. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

49. Additionally, the FTC Health Breach Notification Rule obligates companies that suffered a data breach to provide notice to every individual affected by the data breach, as well as notifying the media and the FTC. *See* 16 CFR 318.1, *et seq.*

---

[13] *Id.*
[14] *Id.*

50. As evidenced by the Data Breach, Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class members' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

51. Defendant was fully aware of its obligation to protect the PII of its current and former employees and other individuals from whom it collected PII, including Plaintiffs and Class members.

52. Defendant had and continues to have a duty to exercise reasonable care in collecting, storing, and protecting the PII from the foreseeable risk of a data breach. The duty arises out of the special relationship that exists between Defendant and Plaintiffs and Class members. Defendant alone had the exclusive ability to implement adequate security measures to its cyber security network to secure and protect Plaintiffs' and Class members' PII.

### 2. **Industry Standards and Noncompliance**

53. As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the PII which they collect and maintain.

54. Some industry best practices that should be implemented by businesses dealing with sensitive PII, like Defendant, include but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendant failed to follow some or all of these industry best practices.

55. Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendant failed to follow these cybersecurity best practices.

56. Defendant should have also followed the minimum standards of any one of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

57. Defendant failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

## F.     **Plaintiffs and the Class Suffered Harm Resulting from the Data Breach**

58. Like any data hack, the Data Breach presents major problems for all affected.[15]

59. The FTC warns the public to pay particular attention to how they keep personally identifying information including Social Security numbers and other sensitive data. As the FTC notes, "once identity thieves have your personal information, they can drain your bank account,

---

[15] Paige Schaffer, *Data Breaches' Impact on Consumers*, Insurance Thought Leadership (July 29, 2021), available at https://www.insurancethoughtleadership.com/cyber/data-breaches-impact-consumers.

run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[16]

60.     The ramifications of Defendant's failure to properly secure Plaintiffs' and Class members' PII are severe. Identity theft occurs when someone uses another person's financial, and personal information, such as that person's name, address, Social Security number, and other information, without permission in order to commit fraud or other crimes.

61.     According to data security experts, one out of every four data breach notification recipients become a victim of identity fraud.

62.     Furthermore, PII has a long shelf-life because it contains different forms of personal information, it can be used in more ways than one, and it typically takes time for an information breach to be detected.

63.     Accordingly, Defendant's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiffs and the Class at an imminent, immediate, and continuing increased risk of identity theft and identity fraud. According to a recent study published in the scholarly journal *Preventive Medicine Reports*, public and corporate data breaches correlate to an increased risk of identity theft for victimized consumers.[17] The same study also found that identity theft is a deeply traumatic event for the victims, with more than a quarter of victims still experiencing sleep problems, anxiety, and irritation even six months after the crime.[18]

---

[16] *Warning Signs of Identity Theft*, Federal Trade Comm'n, available at https://www.identitytheft.gov/#/Warning-Signs-of-Identity-Theft.

[17] David Burnes, Marguerite DeLiema, Lynn Langton, *Risk and protective factors of identity theft victimization in the United States*, Preventive Medicine Reports, Volume 17 (January 23, 2020), available at https://www.sciencedirect.com/science/article/pii/S2211335520300188?via%3Dihub.

[18] *Id.*

64.     There is also a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported. Even data that has not yet been exploited by cybercriminals presents a concrete risk that the cybercriminals who now possess Class members' PII will do so at a later date or re-sell it.

65.     Data breaches have also proven to be costly for affected organizations as well, with the average cost to resolve being $4.45 million dollars in 2023.[19]

66.     Here, due to the Breach, Plaintiffs and Class members have been exposed to injuries that include, but are not limited to:

a.     Theft of PII;

b.     Costs associated with the detection and prevention of identity theft and unauthorized use of financial accounts as a direct and proximate result of the PII stolen during the Data Breach;

c.     Damages arising from the inability to use accounts that may have been compromised during the Data Breach;

d.     Costs associated with time spent to address and mitigate the actual and future consequences of the Data Breach, such as finding fraudulent charges, cancelling and reissuing payment cards, purchasing credit monitoring and identity theft protection services, placing freezes and alerts on their credit reports, contacting their financial institutions to notify them that their personal information was exposed and to dispute fraudulent charges, imposition of withdrawal and purchase limits on compromised accounts, including but not limited to lost productivity and opportunities, time taken from the enjoyment of one's life, and the inconvenience, nuisance, and annoyance of dealing with all issues resulting from the Data Breach, if they were fortunate enough to learn of the Data Breach despite Defendant's delay in disseminating notice in accordance with state law;

---

[19] *Cost of a Data Breach Report 2023*, IBM Security, available at
https://www.ibm.com/reports/data-breach?utm_content=SRCWW&p1=Search&p4=43700072379268622&p5=p&gclid=CjwKCAjwxOymBhAFEiwAnodBLGiGtWfjX0vRlNbx6p9BpWaOo9eZY1i6AMAc6t9S8IKsxdnbBVeUbxoCtk8QAvD_BwE&gclsrc=aw.ds.

e. The imminent and impending injury resulting from potential fraud and identity theft posed because their PII is exposed for theft and sale on the dark web; and

f. The loss of Plaintiffs' and Class members' privacy.

67. Plaintiffs and Class members have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their PII being accessed by cybercriminals.

68. As a direct and proximate result of Defendant's acts and omissions in failing to protect and secure PII, Plaintiffs and Class members have been placed at a substantial risk of harm in the form of identity theft, and they have incurred and will incur actual damages in an attempt to prevent identity theft.

69. Plaintiffs retain an interest in ensuring there are no future breaches, in addition to seeking a remedy for the harms suffered as a result of the Data Breach on behalf of both themselves and similarly situated individuals whose PII was accessed in the Data Breach.

## G. <u>EXPERIENCES SPECIFIC TO PLAINTIFFS</u>

### *Plaintiff Hartleben*

70. Plaintiff Hartleben is a former employee of Defendant. On information and belief, Plaintiff Hartelben's PII was in Defendant's possession at the time of the Data Breach.

71. After the Data Breach, Plaintiff Hartleben experienced a substantial increase in the number of spam calls and emails that she received on a daily basis.

72. As a result of the Data Breach, Plaintiff Hartleben has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff Hartleben has also spent several hours dealing with the

Data Breach, valuable time she otherwise would have spent on other activities, including, but not limited to, work and recreation.

73.     As a result of the Data Breach, Plaintiff Hartleben has suffered anxiety due to the public dissemination of her personal information, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using her PII for purposes of identity theft and fraud. Plaintiff Hartleben is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

74.     Plaintiff Hartleben suffered actual injury from having her PII compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her PII, a form of property that Defendant obtained from her; (b) violation of her privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

75.     As a result of the Data Breach, Hartleben anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. And, as a result of the Data Breach, she is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

### *Plaintiff Patten*

76.     Plaintiff Patten is a current employee of Defendant. On information and belief, Plaintiff Patten's PII was in Defendant's possession at the time of the Data Breach.

77.     After the Data Breach, Plaintiff Patten experienced a substantial increase in the number of spam calls and emails that she received on a daily basis.

19

78.    As a result of the Data Breach, Plaintiff Patten has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff Patten has also spent several hours dealing with the Data Breach, valuable time he otherwise would have spent on other activities, including, but not limited to, work and recreation.

79.    As a result of the Data Breach, Plaintiff Patten has suffered anxiety due to the public dissemination of his personal information, which he believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using his PII for purposes of identity theft and fraud. Plaintiff Patten is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

80.    Plaintiff Patten suffered actual injury from having his PII compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his PII, a form of property that Defendant obtained from him; (b) violation of his privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

81.    As a result of the Data Breach, Patten anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. And, as a result of the Data Breach, he is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## V. CLASS REPRESENTATION ALLEGATIONS

82. Plaintiffs bring this action on behalf of themselves and, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), a Class of:

> All persons in the United States whose PII was accessed in the Data Breach.

Excluded from the Class are Defendant, its executives and officers, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change or expand the Class definition after conducting discovery.

83. <u>Numerosity</u>: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. The exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiffs only through the discovery process. On information and belief, the number of affected individuals estimated to be at least 500 based on the size of Defendant's operations. The members of the Class will be identifiable through information and records in Defendant's possession, custody, and control.

84. <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

      a.      When Defendant learned of the Data Breach;

      b.      Whether hackers obtained Class members' PII via the Data Breach;

      c.      Whether Defendant's response to the Data Breach was adequate;

      d.      Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the PII compromised in the Data Breach;

e.     Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

f.     Whether Defendant owed a duty to safeguard their PII;

g.     Whether Defendant breached its duty to safeguard PII;

h.     Whether Defendant had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiffs and Class members;

i.     Whether Defendant breached its duty to provide timely and accurate notice of the Data Breach to Plaintiffs and Class members;

j.     Whether Defendant's conduct violated the FTCA;

k.     Whether Defendant's conduct was negligent;

l.     Whether Defendant's conduct was *per se* negligent;

m.     Whether Defendant was unjustly enriched;

n.     What damages Plaintiffs and Class members suffered as a result of Defendant's misconduct;

o.     Whether Plaintiffs and Class members are entitled to actual and/or statutory damages; and

p.     Whether Plaintiffs and Class members are entitled to additional credit or identity monitoring and monetary relief.

85.     <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the Class as Plaintiffs and all members of the Class had their PII compromised in the Data Breach. Plaintiffs' claims and damages are also typical of the Class because they resulted from Defendant's uniform wrongful conduct. Likewise, the relief to which Plaintiffs are entitled to are typical of the Class because Defendant has acted, and refused to act, on grounds generally applicable to the Class.

86.     <u>Adequacy</u>: Plaintiffs are adequate class representatives because their interests do not materially or irreconcilably conflict with the interests of the Class they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and

Plaintiffs intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the Class. Neither Plaintiffs nor their counsel have any interests that are antagonistic to the interests of other members of the Class.

87. <u>Superiority</u>: Compared to all other available means of fair and efficient adjudication of the claims of Plaintiffs and the Class, a class action is superior. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Members of the Class can be readily identified and notified based on, *inter alia*, Defendant's records and databases.

## VI.   CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (By Plaintiffs on behalf of the Class)

88. Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

89. Defendant owes a duty of care to protect the PII belonging to Plaintiffs and Class members. Defendant also owes several specific duties including, but not limited to, the duty:

      a.    to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting PII in its possession;

<ol type="a" start="2">
<li>to protect collected and stored PII using reasonable and adequate security procedures and systems compliant with industry standards;</li>
<li>to have procedures in place to detect the loss or unauthorized dissemination of PII in its possession;</li>
<li>to employ reasonable security measures and otherwise protect the PII of Plaintiffs and Class members pursuant to the FTCA;</li>
<li>to implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and</li>
<li>to promptly notify Plaintiffs and Class members of the Data Breach, and to precisely disclose the type(s) of information compromised.</li>
</ol>

90.     Defendant owes this duty because it had a special relationship with Plaintiffs' and Class members. Plaintiffs and Class members entrusted their PII to Defendant on the understanding that adequate security precautions would be taken to protect this information. Furthermore, only Defendant had the ability to protect its systems and the PII stored on them from attack.

91.     Defendant also owes this duty because industry standards mandate that Defendant protect PII that it collects and maintains.

92.     Defendant also owes a duty to timely disclose any unauthorized access and/or theft of the PII belonging to Plaintiffs and Class members. This duty exists to provide Plaintiffs and Class members with the opportunity to undertake appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their PII.

93.     Defendant breached its duties owed to Plaintiffs and Class members by failing to take reasonable appropriate measures to secure, protect, and/or otherwise safeguard their PII.

94.     Defendant also breached the duties it owed to Plaintiffs and Class members by failing to timely and accurately disclose to them that their PII had been improperly acquired and/or accessed.

95.     As a direct and proximate result of Defendant's conduct, Plaintiffs and Class members were damaged. These damages include, and are not limited to:

- Lost or diminished value of their PII;

- Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII;

- Lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges; and

- Permanent increased risk of identity theft.

96.     Plaintiffs and Class members were foreseeable victims of any inadequate security practices on the part of Defendant and the damages they suffered were the foreseeable result of the aforementioned inadequate security practices.

97.     In failing to provide prompt and adequate individual notice of the Data Breach, Defendant also acted with reckless disregard for the rights of Plaintiffs and Class members.

98.     Plaintiffs and Class members are entitled to damages in an amount to be proven at trial and injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class members.

## COUNT II
## NEGLIGENCE *PER SE*
### (By Plaintiffs on behalf of the Class)

99.     Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

100.    Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, imposes a duty on Defendant to provide fair and adequate data security to secure, protect, and/or otherwise safeguard the PII of Plaintiffs and Class members.

101.    Defendant violated the FTCA by failing to provide fair, reasonable, or adequate computer systems and data security practices to secure, protect, and/or otherwise safeguard Plaintiffs' and Class members' PII.

102.    Defendant's failure to comply with the FTCA constitutes negligence *per se*.

103.    Plaintiffs and Class members are within the class of persons that the FTCA is intended to protect.

104.    It was reasonably foreseeable that the failure to protect and secure Plaintiffs' and Class members' PII in compliance with applicable laws and industry standards would result in that Information being accessed and stolen by unauthorized actors.

105.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and Class members have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their PII, including but not limited to theft of their personal information, damages from the lost time and effort to mitigate the impact of the Data Breach, and permanently increased risk of identity theft.

106.    Plaintiffs and Class members are entitled to damages in an amount to be proven at trial and injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class members.

### COUNT III
### BREACH OF IMPLIED CONTRACT
**(By Plaintiffs on behalf of the Class)**

107.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

108.    Plaintiffs and Class members provided Defendant with their PII.

109. By providing their PII, and upon Defendant's acceptance of this information, Plaintiffs and the Class, on one hand, and Defendant, on the other hand, entered into implied-in-fact contracts for the provision of data security, separate and apart from any express contract entered into between the parties.

110. The implied contracts between Defendant and Plaintiffs and Class members obligated Defendant to take reasonable steps to secure, protect, safeguard, and keep confidential Plaintiffs' and Class members' PII. The terms of these implied contracts are described in federal laws, state laws, and industry standards, as alleged above.

111. The implied contracts for data security also obligated Defendant to provide Plaintiffs and Class members with prompt, timely, and sufficient notice of any and all unauthorized access or theft of their PII.

112. Defendant breached these implied contracts by failing to take, develop and implement adequate policies and procedures to safeguard, protect, and secure the PII belonging to Plaintiffs and Class members; allowing unauthorized persons to access Plaintiffs' and Class members' PII; and failing to provide prompt, timely, and sufficient notice of the Data Breach to Plaintiffs and Class members, as alleged above.

113. As a direct and proximate result of Defendant's breaches of the implied contracts, Plaintiffs and Class members have been damaged as described herein, will continue to suffer injuries as detailed above due to the continued risk of exposure of PII, and are entitled to damages in an amount to be proven at trial.

**COUNT IV**
**UNJUST ENRICHMENT**
**(By Plaintiffs on behalf of the Class)**

114. Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

115. This count is brought in the alternative to Count III.

116. Plaintiffs and the Class have a legal and equitable interest in their PII that was collected and maintained by Defendant.

117. Plaintiffs and the Class conferred their PII to Defendant as part of their employment. Plaintiffs and the Class also conferred their labor in exchange for compensation.

118. Defendant was benefitted in this exchange as the labor it received from Plaintiffs and Class members enabled it to continue providing its services. Defendant knew that it was so benefitted.

119. Employees of Defendant, Plaintiffs and Class members, conferred their labor and PII with the understanding that a portion of the revenues that Defendant made using their labor was, in part, to be used to implement data security sufficient to adequately protect their private Information. Had the employees known that Defendant was not using the revenues from their labor, in part, to protect their PII, they would have demanded a higher compensation for their labor. In effect, they understood that a portion of the compensation they would have received was instead to be used to implement data security measures. Thus, this conferred labor, and/or the employees' acceptance of a lower compensation for that labor, represented a benefit to Defendant that was to be used for a specific purpose. Defendant knew, or should have known, about this exchange for specific purpose.

120. However, instead of providing a reasonable level of security, training, protocols, and other measures that would have prevented the Data Breach, as described in detail above, Defendant, upon information and belief, knowingly and opportunistically elected to increase its own profits at the expense of Plaintiffs and Class members by not expending the money required to do so.

121. And in failing to expend the revenues made from the labor of employees (compensated at a lower rate than otherwise would have been demanded) on data security, Defendant knowingly and deliberately enriched itself at the expense of Plaintiffs and Class members.

122. Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from Plaintiffs and Class members in an unfair and unconscionable manner.

123. Defendant is therefore liable to Plaintiffs and the Class for restitution in the amount of the benefit conferred on Defendant, including specifically the value to Defendant of the money it should have expended on reasonable security measures. Plaintiffs and Class members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

## COUNT V
## BREACH OF FIDUCIARY DUTY
### (By Plaintiffs on behalf of the Class)

124. Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

125. Plaintiffs bring this claim on behalf of themselves and the Class.

126. Plaintiffs and Class members provided their PII to Defendant in confidence with the reasonable belief that Defendant would protect their information. Plaintiffs and Class members would not have provided their information to Defendant had they known it would fail to adequately protect their information.

127. In collecting and maintaining this PII, Defendant created a fiduciary relationship between it and Plaintiffs and Class members. As such, Defendant owed a duty to *primarily* act for

the benefit of its current and former employees upon matters within the scope of their relationship; *i.e.*, the secure maintenance and storage of the PII. Thus, this created a duty to protect Plaintiffs' and Class Members' PII.

128.    Defendant breached these fiduciary duties by failing to implement adequate safeguards and causing Plaintiffs' and Class members' PII to be disclosed to unauthorized third parties.

129.    As a direct and proximate result of Defendant's breaches of its fiduciary duties and the resulting disclosure of Plaintiffs and Class member's PII, Plaintiffs and Class members have suffered damages, including, but not limited to exposure to heightened future risk of identity theft, loss of privacy, confidentiality, and emotional distress, and Plaintiffs and Class members are entitled to damages in an amount to be proven at trial.

### COUNT VI
### INVASION OF PRIVACY
**(By Plaintiffs on behalf of the Class)**

130.    Plaintiffs incorporates and realleges all allegations above as if fully set forth herein.

131.    Plaintiffs and Class members had a reasonable expectation of privacy in the PII that Defendant possessed and/or continues to possess.

132.    By failing to keep Plaintiffs' and Class members' PII safe, and by misusing and/or disclosing their PII to unauthorized parties for unauthorized use, Defendant invaded Plaintiffs' and Class members' privacy by:

  a.    Intruding into their private affairs in a manner that would be highly offensive to a reasonable person; and

  b.    Publicizing private facts about Plaintiffs and Class members, which is highly offensive to a reasonable person.

133.    Defendant knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiffs' position would consider Defendant's actions highly offensive.

30

134.    Defendant invaded Plaintiffs' and Class members' right to privacy and intruded into Plaintiffs' and Class members' private affairs by misusing and/or disclosing their private information without their informed, voluntary, affirmative, and clear consent.

135.    As a proximate result of such misuse and disclosures, Plaintiffs' and Class members' reasonable expectation of privacy in their PII was unduly frustrated and thwarted. Defendant's conduct amounted to a serious invasion of Plaintiffs' and Class members' protected privacy interests.

136.    In failing to protect Plaintiffs' and Class members' PII, and in misusing and/or disclosing their PII, Defendant has acted with malice and oppression and in conscious disregard of Plaintiffs' and Class members' rights to have such information kept confidential and private, in failing to provide adequate notice, and in placing its own economic, corporate, and legal interests above the privacy interests of hundreds of individuals whose PII it collected and stored. Plaintiffs, therefore, seek an award of damages, including punitive damages, on behalf of themselves and the Class.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually, and on behalf of all members of the Class, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A.    That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiffs are proper class representatives; and appoint Plaintiffs' Counsel as Class Counsel;

B.    That the Court grant permanent injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein;

C.    That the Court award Plaintiffs and Class members compensatory, consequential, and general damages in an amount to be determined at trial;

D.    That the Court award Plaintiffs and Class members statutory damages, and punitive or exemplary damages, to the extent permitted by law;

E.    That the Court award to Plaintiffs the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

F.    That the Court award pre- and post-judgment interest at the maximum legal rate;

G.    That the Court award grant all such equitable relief as it deems proper and just, including, but not limited to, disgorgement and restitution; and

H.    That the Court grant all other relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the putative Class, demands a trial by jury on all issues so triable.

Date: November 24, 2025                         Respectfully Submitted,

*/s/ Nickolas J. Hagman*
Nickolas J. Hagman
Alex Lee*
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
nhagman@caffertyclobes.com
alee@caffertyclobes.com

* *Pro Hac Vice* forthcoming

*Attorneys for Plaintiffs and the Proposed Class*